IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THOMAS J. SIGGERS, | |
| Plaintiff, | Case No. 12 C 9042 |
| v. | Judge Harry D. Leinenweber |
| THORNTON HIGH SCHOOL DISTRCT 205, | |
| Defendants. | |

### MEMORANDUM OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment [ECF No. 60]. For the reasons stated herein, the Motion is granted.

### I. BACKGROUND

The following facts are undisputed except where noted. During the 2008-2009 school year Plaintiff, Thomas J. Siggers, was employed by Defendant, Thornton High School District 205 ("the District") as a "permanent substitute" working at Thornton High School. At 76 years of age, Plaintiff was the oldest of the substitute teachers, and the longest serving permanent substitute at Thornton High School. Plaintiff's qualifications and educational experience included a Master's Degree, a Type 75 Certificate, which is a necessary prerequisite for

administrative responsibilities, two years as a school principal, and over five years as a college administrator.

Plaintiff was one of two permanent substitutes at Thornton during the 2008-2009 school year. The second, Mr. Powell, was over 40 years of age, a retired Marine, and longtime substitute at Thornton. As a permanent substitute, Plaintiff reported to work daily, regardless of need, and was paid $216.00 per day. Whereas day-to-day substitutes were called in only as needed and paid $100.00 for every day worked.

The events leading to this lawsuit took place starting in the spring of 2009. Near the end of the 2008-2009 school year, Thornton High School Principal Betheny Lyke had a meeting with Thornton's Administrative Intern, Wanda Russell, and Ms. Russell's secretary, Shavonna Nelson. Principal Lyke informed Ms. Russell and Ms. Nelson that, for the coming school year, to be hired as a permanent substitute, a candidate had to be enrolled in a graduate program in the field of education and desire employment in that field. She stated that the new requirements came from the District, but neither Ms. Russell nor Ms. Nelson could recall ever seeing anything in writing from the District confirming this. Principal Lyke directed Ms. Russell and Ms. Nelson to inform the substitute teachers of the change, and noted that if Plaintiff and Mr. Lawrence were not enrolled

in an educational degree program they would no longer qualify for the permanent substitute positions.

Ms. Russell then called a meeting to explain the new permanent substitute requirements to the substitute teachers who regularly worked at Thornton High School. Plaintiff attended the meeting. After explaining the changes, Ms. Russell told everyone that they were welcome to apply and that they could do so by submitting to Principal Lyke a resume, transcript, or other document proving their enrollment in an education degree program. Several substitutes applied for the position, but Plaintiff chose not to because he did not meet the newly imposed requirements. From the applicants, Principal Lyke selected three people for the permanent substitute positions for the 2009-2010 school year: Ouida Dyer-Bradford, a woman in her 40's and an acquaintance of Principal Lyke; Lynell Ingram, a nephew of Ms. Russell; and Dontrell Jackson, a man in his 20's and the son of one of the deans at Thornton.

At the end of the 2008-2009 school year, before the staff left for the summer, Ms. Russell approached Plaintiff and told him that she had been asked to get his mailbox key and his keys to the building. Plaintiff testified that in the past he had always kept his keys over the summer. It is disputed whether, that summer, Plaintiff received from the District the eligibility form requesting that he affirm or disaffirm his

desire to be kept on the approved-substitute list for the 2009-2010 school year. A copy of the form was produced by the District, but is dated November 13, 2009, which is incongruous with the form's early summer completion deadline. Plaintiff did not submit the form on time, despite having done so every summer for the 13 prior years he was employed at Thornton.

When Plaintiff returned to the school in fall 2009 seeking a substitute assignment he was informed by Ms. Nelson that his name did not appear on the approved-substitute list. Ms. Nelson brought this to the attention of Ms. Russell, who telephoned the District office and was informed that Plaintiff was not on the list because he had not completed the eligibility form. Plaintiff also raised the issue with Principal Lyke, who indicated that she thought he was supposed to be there every day, and said she would talk to Ms. Russell.

Although the exact timeline is unclear, three significant events occurred in the following weeks. At some point, Plaintiff was given a substitute teacher assignment. He taught a full day and was issued a check on September 11, 2009, in the amount of $91.66. On September 15, 2009, after receiving only the one assignment, Plaintiff decided to file a complaint with the Equal Employment Opportunity Commission (the "EEOC"). Thereafter, Plaintiff went to the District office to obtain the eligibility form in order to be placed on the approved-

substitute list, but he was refused because he had a pending EEOC complaint. Plaintiff then called the EEOC investigator assigned to his case, Mr. Lane, who instructed the District to issue Plaintiff the form. Thereafter, Plaintiff went to Thornton High School and obtained the form. During this same timeframe, Plaintiff was escorted from the school building by two security guards at the request of Ms. Russell. The parties dispute whether this occurred while Plaintiff was teaching or when he came to the school to obtain the eligibility form.

On November 17, 2009, Plaintiff returned the completed eligibility form to the District office and his name was added to the 2009-2010 approved-substitute list. Plaintiff still did not receive any substitute assignments. But he also did not return to Thornton High School and attempt to obtain a substitute teaching assignment directly from Ms. Nelson, nor did he utilize the electronic "sub service" list to obtain an assignment electronically.

## II. LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Material facts are those that affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute exists "if the evidence is such that a

reasonable jury could return a verdict for the nonmoving party." *Id.* The moving party may meet its burden by showing "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If the moving party satisfies its initial burden, the non-moving party must demonstrate with evidence "that a triable issue of fact remains on issues for which [it] bears the burden of proof." *Knight v. Wiseman,* 590 F.3d 458, 463–64 (7th Cir. 2009).

The judge's role at summary judgment is not to make credibility determinations or weigh the evidence. *Washington v. Haupert,* 481 F.3d 543, 550 (7th Cir. 2007). In determining whether a genuine issue of material fact exists, the Court construes all evidence in the light most favorable to the non-moving party. *See, Bellaver v. Quanex Corp.,* 200 F.3d 485, 491-92 (7th Cir. 2000).

### III. **ANALYSIS**

The Age Discrimination in Employment Act ("ADEA") makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). While age need not be the sole factor motivating the employer's decision, the plaintiff must establish that age was the *determinative* factor. *See, Gross v. FBL Fin.,*

*Servs., Inc.,* 557 U.S. 167, 180 (2009)(holding that under ADEA's language prohibiting discrimination "because of" age, plaintiff must prove that age was "the 'but-for' cause" of the adverse employment action); *Lindsey v. Walgreen Co.,* 615 F.3d 873, 876 (7th Cir. 2010). Persons over the age of 40 are a protected class under the law. 29 U.S.C. § 631.

A plaintiff may prove age discrimination using either the direct or the indirect (burden-shifting) method of proof. *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1060 (7th Cir. 2003). But under either the direct or indirect method of proof, the ultimate standard is the same: the plaintiff must demonstrate that the employer would not have made the adverse employment decision in question but for the plaintiff's membership in the protected class. *Id.* at 1061.

### A. Direct Method

To proceed under the direct method of proof, a plaintiff must show, by way of direct or circumstantial evidence, that his employer's decision to take an adverse job action against him was motivated by an impermissible purpose. *Id.* Direct evidence, if believed by the trier of fact, "prove[s] discriminatory conduct . . . without reliance on inference or presumption." *Id.* Direct evidence could take the form of "an admission by the decisionmaker that the adverse employment

action was motivated by discriminatory animus." *Darchak v. City of Chi. Bd. of Educ.*, 580 F.3d 622, 631 (7th Cir. 2009).

But a plaintiff need not provide such "smoking-gun" evidence; he "can also prevail under the direct method of proof by constructing a 'convincing mosaic' of circumstantial evidence that 'allows a jury to infer intentional discrimination by the decisionmaker.'" *Id.* Circumstantial evidence can include: suspicious timing, ambiguous statements or behavior directed at other employees in the protected group, evidence that similarly situated employees outside the protected class received systematically better treatment, and evidence that the employee was qualified for the job in question but was passed over in favor of a person outside the protected class. *Mullin v. Temco Machinery, Inc.*, 732 F.3d 772, 776 (7th Cir. 2013). Where a plaintiff relies on circumstantial evidence under the direct method of proof, the evidence must point directly to a discriminatory reason for the employer's action. *Id.* at 777.

Plaintiff does not have "smoking-gun" evidence of the District's discriminatory motives in demoting him from the permanent substitute position or failing to rehire him for the 2009-2010 school year. Rather, he relies on circumstantial evidence to argue that the District implemented a scheme to prevent him from continuing to work at Thornton High School due to his age. But Plaintiff's claim suffers a fatal flaw — he has

not presented any evidence that directly points to his age being the reason for the District's actions. The evidence Plaintiff relies on may show animus towards him, but it provides no insight as to the motivation for the District's actions. For example, Principal Lyke's comment that Plaintiff and Mr. Lawrence would no longer qualify for the permanent substitute position under the new requirements is factually accurate, and without more, is not enough to show discriminatory animus towards them based on their age. Similarly, the District has non-discriminatory reasons for taking the Plaintiff's keys at the end of the school year. The evidence that all three individuals hired for the permanent substitute position had connections within the District is strong evidence that the new qualifications were created to free up the permanent substitute positions, but it does not show animus based on age, especially where at least one of those individuals was within the protected class, albeit significantly younger than Plaintiff. Even Plaintiff's most damning evidence — that he was escorted from the building by security — has no connection to his age. There is no evidence of suspicious timing, or ambiguous statements or behavior directed at him or other employees in the protected class. Nor has Plaintiff shown that similarly situated employees outside the protected class received systematically better treatment.

Plaintiff appears to argue that the only possible reason for him to be ousted was his age. Unfortunately for Plaintiff, his suspicion that his age may have been a factor in the way he was treated is not enough. Although the Court must draw inferences in favor of Plaintiff (the nonmoving party), the Court may not "draw[] inferences that are supported by only speculation or conjecture." *Brown v. Advocate S. Suburban Hosp.*, 700 F.3d 1101, 1104 (7th Cir. 2012). The evidence presented is insufficient for Plaintiff to prove his case under the direct method because it does not point directly to the discriminatory reason for the District's actions.

### B. Indirect Method

Plaintiff also proceeds under the indirect method's burden shifting framework, which was first set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under this method, Plaintiff has the initial burden of proving a *prima facie* case, which consists of four elements: (1) the plaintiff was a member of the protected class, (2) the plaintiff was qualified for the position, (3) the plaintiff was rejected from the position, and (4) the employer treated other similarly situated persons outside of the protected class more favorably. *Stockwell v. City of Harvey,* 597 F.3d 895, 901 (7th Cir. 2010). If the plaintiff establishes those elements, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory

reason for its action. *Id.* If the defendant does so, the burden returns to the plaintiff to prove that the stated reason is mere pretext. *Id.*

Plaintiff has two discrete claims of age discrimination by the District: (1) when he was demoted from the position of permanent substitute, and (2) when he was not recalled as a day-to-day substitute teacher for the 2009-2010 school year. Plaintiff, at 76 years of age, was at all relevant times a member of a protected class. And with a Master's Degree, a Type 75 Certificate, two years as a school principal, and over five years as a college administrator, he was certainly qualified to be either a permanent or day-to-day substitute. Yet the District contends that Plaintiff has not met his *prima facie* burden for either of his discrimination claims because he did not apply for the positions from which he now claims to have been rejected.

To claim discrimination in hiring, "the plaintiff must first show that [he] applied for the position." *Hill v. Potter,* 625 F.3d 998, 1003 (7th Cir. 2010). If a plaintiff does not apply for a position, he cannot make a *prima facie* case for unlawful discrimination unless he can demonstrate that the employer's discriminatory practices prevented him from applying. *Hudson v. Chicago Transit Authority,* 375 F.3d 552, 558 (7th Cir. 2004). It is undisputed that Plaintiff did not apply for the

permanent substitute position, or submit the eligibility form for the 2009-2010 school year in a timely fashion, or seek to obtain a substitute position once he was added to the approved-substitute list. But Plaintiff argues that the District's actions prevented him from doing so. The Court will discuss each claim of discrimination in turn.

### 1. *Discrimination Claim*

In regards to the permanent substitute position, it is undisputed that the requirements for the position were changed prior to the 2009-2010 school year and that Plaintiff did not qualify for the position under the new standards. The District claims that Principal Lyke wanted to use the permanent substitute position as a recruiting tool, and she instituted the graduate program requirement because it showed their desire for permanent employment in the field of education. Plaintiff contends that these reasons are pretextual, and that in reality, the changes were made to oust Plaintiff from the permanent substitute position.

To establish that the District's proffered reasons were mere pretext, Plaintiff must put forth evidence demonstrating that the District's "nondiscriminatory reason was dishonest," "not credible," or "factually baseless," and that "the employer's true reason was based on a discriminatory intent." *Perez v. Illinois,* 488 F.3d 773, 773 (7th Cir. 2007). To do so,

Plaintiff must "identify such weaknesses, implausibilities, inconsistencies, or contradictions in the purported reasons that a jury could find them unworthy of credence and hence infer that [the District] did not act for the asserted nondiscriminatory reasons." *Fane v. Locke Reynolds, LLP,* 480 F.3d 534, 541 (7th Cir. 2007).

Plaintiff argues that Principal Lyke changed the requirements for the permanent substitute position of her own accord, against District policy. Although Ms. Russell and Ms. Nelson testified that Principal Lyke had stated that the new requirements came from the District, neither of them could recall seeing anything in writing from the District to confirm this. But even assuming that Principal Lyke changed the requirements on her own, Plaintiff has failed to show that she was not authorized to do so or that she did so with discriminatory intent. Principal Lyke stated that it was completely within her authority as Principal to require substitutes at Thornton to possess additional qualifications beyond the minimum qualifications set by the State. Plaintiff cites the testimony of Ms. Mickels, an educational consultant for District 205, as evidence to the contrary. Ms. Mickels stated that qualifications for substitute teachers were set by the District's regional office and were intended to be uniform throughout the District. But Ms. Mickels did not begin her

employment with the District until 2013, and has no personal knowledge of Plaintiff's employment or the motivation for the change in requirements at Thornton in 2009.

The evidence is insufficient to prove that the District's nondiscriminatory reason for changing the requirements for the permanent substitute position is not credible or factually baseless. As such, Plaintiff cannot meet his *prima facie* burden because he has failed to prove that the District's nondiscriminatory reasons were pretextual and that its discriminatory actions prevented him from applying. *See, Hill,* 625 F.3d at 1003.

Moreover, Plaintiff's claim must fail because he cannot satisfy the fourth element of a *prima facie* case — he cannot prove that people outside the protected class were systematically treated more favorably. Every permanent substitute candidate was subject to new requirements. Others who would have been qualified for the permanent substitute position before the change in requirements, but were not enrolled in an educational degree program, were not able to apply under the new requirements — regardless of their age. Therefore, the Court grants summary judgment in favor of the District on Plaintiff's discrimination claim based on his demotion from the permanent substitute position.

## 2. Failure to Recall

Plaintiff's claim based on the District's failure to recall him as a day-to-day substitute teacher for the 2009-2010 school year suffers similar shortcomings. Plaintiff argues that the District prevented him from applying for the position by withholding the all-important eligibility form. While it is disputed whether Plaintiff received the form over the summer, it is undisputed that he ultimately did receive and return the completed form to the District. Yet after doing so, Plaintiff failed to take any affirmative steps to obtain a substitute assignment. A day-to-day substitute teacher is employed on *per diem* basis, which means they have no regular schedule and only work as needed. Because of the unique structure of this type of employment, Plaintiff's complaint of being rejected from the day-to-day substitute position when he showed no interest in obtaining assignments is tenuous at best.

Plaintiff's claim suffers further damage due to his inability to prove that people outside the protected class were treated more favorably by the District. Every substitute teacher had to complete the eligibility form in order to be placed on the approved-substitute list, and had to obtain substitute teaching assignments either directly through Ms. Nelson or electronically through the sub service. Plaintiff points to no evidence showing that younger substitutes were

given assignments despite failing to complete the eligibility form.  Nor is there any evidence that younger substitutes obtained assignments by any means other than directly through Ms. Nelson or through the sub service.  Without this point of comparison, it is impossible for Plaintiff to meet his *prima facie* burden.  Therefore, the Court grants summary judgment in favor of the District on Plaintiff's discrimination claim based on the District's failure to recall him as a day-to-day substitute.

## IV.  <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion for Summary Judgment [ECF No. 60] is granted.

**IT IS SO ORDERED.**

  
  
_____
Harry D. Leinenweber, Judge
United States District Court

Dated: 11/24/2015